UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDDY MARTIN JEREZ CASTILLO,

       Petitioner,

v.                                Case No. 2:26-cv-550-JES-DNF

SECRETARY, KRISTI NOEM, et
al.,

       Respondents.
_____/

**OPINION AND ORDER**

Before the Court are Petitioner Eddy Martin Jerez Castillo's petition for writ of habeas corpus (Doc. 1), the government's response (Doc. 8), and Jerez Castillo's reply (Doc. 10). For the below reasons, the Court grants the petition to the extent set forth in this Order.

**I.  Background**

Jerez Castillo is a 76-year-old native and citizen of Cuba who entered the United States in 1990 and placed into removal proceedings. (Doc. 1 at 2; Doc. 8 at 2). On August 9, 1991, an immigration judge ordered Jerez Castillo removed in absentia after he twice failed to appeal at an immigration court hearing. (Doc. 8 at 2). Castillo was convicted of aggravated assault in 1997 and sentenced to a year in prison. (Id.) He was released on an order of supervision in 2000. (Id.) Jerez Castillo has complied with the conditions of his release and has no subsequent criminal

history.  (Doc. 1 at 2).  Nevertheless, on October 30, 2025, Jerez Castillo's order of supervision was revoked, and he was placed in immigration custody.  (Doc. 8 at 2).  At the time of filing this petition, Jerez Castillo had been in ICE custody for 120 days. (Id.)  As of April 28, 2026, he has been confined for 180 days.

## II.  Discussion

### A.   The Court has jurisdiction to consider Jerez Castillo's claims.

Respondents argue that the Court lacks jurisdiction to consider this petition.  (Doc. 8 at 3).  They point to a provision that bars courts from hearing certain claims that states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  But this jurisdictional bar is narrow.  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999); see also Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that

2

technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs., 964 F.3d 1250, 1258 (11th Cir. 2020).

Respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  But the zipper clause only applies to claims requesting review of a removal order.  See Madu v. U.S. Attorney Gen., 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Jerez Castillo does not challenge the commencement of a

proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, he challenges the legality and length of his detention based on procedural deficiencies and under a framework devised by the Supreme Court for district courts to apply. See Zadvydas, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Jerez Castillo's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

**B. Jerez Castillo's continued detention violates the Supreme Court's framework in Zadvydas v. Davis.**

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. Id. Detention may continue after the removal period, but not indefinitely.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal

4

is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.

Here, Respondents assert (and the Court agrees) that Jerez Castillo was given a final order of removal in 1999. (Doc. 8 at 2). He has now been in immigration custody for 180 days, since October 30, 2025. Because the six-month period for presumptively reasonable detention has expired, Zadvydas's burden-shifting framework applies.

Respondents make no argument that Jerez Castillo's removal is likely in the reasonably foreseeable future. They do not allege that any country has agreed to accept Jerez Castillo—or that they have even inquired about that possibility—and they do not explain

why no progress has been made on that front in the 180 days since Jerez Castillo was taken into detention. In short, they do not demonstrate that they have done anything at all to effectuate Jerez Castillo's removal in the 180 days he has been detained in immigration custody. Under, Zadvydas, this is insufficient to show a realistic likelihood of Jerez Castillo's removal in the reasonably foreseeable future.[1] See Douglas v. Baker, 812 F.Supp.3d 525, 532 (D. Maryland Oct. 24, 2025) ("[T]he deference baked into the Zadvydas standard does not permit the government to detain a noncitizen and then sit on its hands. Such inaction, or lack of progress in effectuating removal, is precisely what Zadvydas forbids.")

## III. Conclusion

The Court finds no significant likelihood that Jerez Castillo will be removed in the reasonably foreseeable future. He is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision. If Jerez Castillo

---

[1] See 8 C.F.R. 241.13(f) ("Factors for consideration [as to whether there is a significant likelihood of removing a detained alien]. The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.").

fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Jerez Castillo to "assur[e] [his] presence at the moment of removal."  Zadvydas, 533 U.S. at 680.

Accordingly, it is hereby

**ORDERED:**

1.    Eddy Martin Jerez Castillo's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED.**

2.    Respondents shall release Jerez Castillo within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on April 28, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

7